# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MHN

| | |
|---|---|
| THOMAS D. CAHEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 7201 |
| v. ) | |
| ) | Magistrate Judge |
| MICHAEL J. ASTRUE, ) | Martin C. Ashman |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Thomas D. Cahel ("Cahel"), seeks judicial review of a final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), denying him Social Security disability insurance benefits ("DIB"). Before the Court is Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(c). For the reasons set forth below, the Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

### I. Background

#### A. Procedural History

Thomas D. Cahel first applied for DIB on April 7, 2003, requesting relief for an alleged disability that began on August 31, 2002. (R. at 97.) After the Social Security Administration

denied his claim both initially and on reconsideration, it was finally denied by an Administrative Law Judge (ALJ) on June 16, 2004. (R. at 97, 101.) Cahel then requested Appeals Council review, which was denied on July 16, 2004, making the ALJ's decision the final decision of the Commissioner. (R. at 89.)

On September 2, 2004, Cahel again applied for DIB, once again alleging a disability onset date of August 31, 2002. (R. at 62.) His application was denied initially and on reconsideration. (R. at 110, 116.) Cahel then requested a hearing before an ALJ. (R. at 120.) Cahel first appeared before the ALJ on July 27, 2006. (R. at 272-80.) Cahel sought and received a postponement to seek legal representation. (R. at 272.) On October 10, 2006, Cahel again appeared before the ALJ without representation. (R. at 284-308.) In a decision dated October 27, 2006, the ALJ found that Cahel was able to perform his past relevant work or, alternatively, that he could perform a significant number of jobs at the light to sedentary level. (R. at 19-22.) After the Appeals Council denied Cahel's request for review, Cahel timely appealed the ALJ's decision to this Court. (R. at 5.)

### B. Factual History

#### 1. Cahel's Background

At the time of his application, Cahel was forty-five years old. (R. at 169.) His highest level of educational attainment was the twelfth grade. (R. at 167.) Cahel's past relevant work includes warehouse, maintenance, and security work. (R. at 178.) His work history spans from 1986 to 2002. (Id.) Cahel worked for a very short time in 2003 and then stopped working due to

his alleged disability. (R. at 289.) At his hearing on July 27, 2006, Cahel testified that he was able to return to work and was seeking employment. (R. at 276.)

### 2. Medical Evidence

Cahel has degenerative joint disease in both shoulders. (R. at 245.) In August 2003, he began seeing a physical therapist. (R. at 256.) On October 10, 2003, Cahel underwent left shoulder hemiarthroplasty, which is more commonly known as shoulder replacement surgery. (R. at 80.) Over the next two years, Cahel attended forty-three physical therapy sessions for his shoulder. (R. at 256-57.) Twenty-six of those sessions were after June 17, 2004, the date of the first ALJ decision denying him disability benefits. (Id.) The record contains a letter from Cahel's physical therapist stating that "during [the] time following his surgical intervention he was unable to perform job related duties to allow for adequately [sic] healing of prosthesis to the bone." (R. at 255.)

On November 22, 2004, Dr. Dean Thomas Velis performed a consultative examination. (R. at 243-46.) Dr. Velis noted that Cahel appeared to be in "moderate to severe distress when attempting to mobilize [his] right shoulder" and "mild distress" when attempting to mobilize his left shoulder. (R. at 244.) He found that Cahel's left shoulder abduction was ninety degrees with range of motion pain, tenderness, and mild atrophy of the left deltoid. (R. at 245.) He found that the right shoulder had crepitus, tenderness, and forty-five degrees of abduction. (Id.) His clinical impression was degenerative joint disease of both shoulders, with pain improving with the passage of time in the left shoulder and worsening in the right shoulder. (R. 245-46.) On December 15, 2004, Dr. Robert Patey reviewed the record and found that Cahel could lift up to

20 pounds occasionally and 10 pounds frequently, and could stand, walk, or sit for about six hours in an eight-hour work day. (R. at 248.) He found that Cahel was limited in his ability to push, pull, and reach in all directions. (R. at 248, 250.)

### C. Hearing Testimony

On July 27, 2006, Cahel appeared before ALJ John Kraybill and sought a postponement to seek representation. (R. at 272.) The ALJ agreed to the postponement. (R. at 272.) The ALJ explained that he would only consider the period after Cahel's prior disability determination and encouraged Cahel to update the files with more recent medical information. (R. at 272-73.) Cahel testified that his shoulder had improved substantially since the June 16, 2004, decision and that he was ready to return to work. (R. at 274-76.) He testified that he initially could not lift his shoulder and that it took him about six months to be able to raise his shoulder in the air. (R. at 279.) He also testified that the rehabilitation process was "pretty painful." (Id.) Cahel explained that he was "just going for that one year" of benefits, representing the period when he was rehabilitating his shoulder, because he expected to be working by the time of the next hearing. (R. at 280.)

On October 10, 2006, Cahel again appeared without representation before ALJ Kraybill. (R. at 284.) Cahel submitted physical therapy records, which were admitted into evidence. (Id.) The ALJ again explained that he would only examine the period after the earlier ALJ decision. (R. at 285.) Cahel testified that at the time of the prior hearing he had just had an operation. (Id.) At that point he "had no movement whatsoever in [his] left arm." (Id.) According to Cahel, the rehabilitation of his arm took two years. (R. at 286.) Cahel also testified that he had lived alone

for the last five years and was able to care for himself. (R. at 287, 293.) He testified that he had not worked at all since June 17, 2004. (R. at 288.) Cahel stated that his last physical therapy session was in October 2005. (R. at 289.) Prior to that time he had gone to physical therapy once or twice per month and did some exercises at home. (R. at 294.) He testified that he was not taking any medications and that he could probably carry a case of soda pop. (R. at 292-93.) Cahel also stated that he was presently seeking to return to work. (R. at 290.)

Vocational expert William Schweihs also testified at the hearing. (R. at 301-06.) The ALJ posed a hypothetical based on the residual functional capacity assessment provided by the state agency physician. (R. at 304-05.) Schweihs testified that a person with limited use of his upper extremities for pushing and pulling, an inability to climb ladders or ropes, a limited ability to reach in all directions, and the ability to lift only light weights could perform Cahel's past work as a security guard. (R. at 304-05.) He also testified that a person with those limitations could perform gate guard work, parking lot attendant work, doorman work, general office clerical work, assembling, packaging, and visual inspection. (R. at 305.) Of these jobs, Schweihs testified that there were about 4,000 stationary guard jobs, 6,000 general office clerk jobs, 6,000 assembly jobs, 3,000 packer jobs, and 2,500 visual inspection jobs in the region. (R. at 306.)

### D. The ALJ's Opinion

On October 27, 2006, the ALJ denied Cahel's claim for disability benefits. (R. at 22.) The ALJ found that Cahel met the insurance requirements for benefits and had not engaged in substantial gainful activity since his alleged disability onset date of August 31, 2002. (R. at 19.) The ALJ also found that Cahel had a severe impairment: degenerative joint disease of the

shoulders. (Id.) However, the ALJ found that Cahel's impairment did not meet or equal any of the impairments listed in the administrative regulations. (Id.) The ALJ also found that Cahel was able to perform his past relevant work or, alternatively, to perform other work at the light to sedentary exertional levels. (R. at 22.)

Because Cahel was denied DIB benefits in June 2004, the ALJ's disability determination was limited to the time period after the date of the prior decision. The ALJ determined that the only new medical evidence presented was Cahel's physical therapy records, which ended in October 2005. (R. at 20.) He found that Cahel had attended physical therapy about once or twice a month and devised his own exercise program. (R. at 20-21.) The ALJ also found that at the time of the hearing Cahel could perform all of the activities of daily living, could carry a case of pop, had no trouble sleeping, and was on no medication. (R. at 20-21.) He stated that Cahel "has had no shoulder surgery since his shoulders were injured in 1991." (R. at 20.)

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 21.) He explained that "the fact that the claimant has undergone no treatment since 2003 other than some brief physical therapy which ended in October 2005 further demonstrates that he has no significant limitations." (Id.) The ALJ found that Cahel was not limited in his activities of daily living and noted that Cahel admitted he could work. (Id.) The ALJ also relied on the opinion of the state agency physician, who found that Cahel could lift and carry up to 20 pounds occasionally and 10 pounds frequently, that he could sit, stand, and walk throughout a normal workday, and that he had limitations in climbing, balancing, stooping, kneeling, crouching,

crawling, reaching, and pushing and pulling with his upper extremities. (Id.) The ALJ found that this opinion evidence was "consistent with the medical evidence, consistent with the testimony, and in particular consistent with the fact that the claimant is not under treatment and is not on any medication." (Id.) Accordingly, the ALJ found that Cahel's residual functional capacity allowed him to perform his past work as a gate guard as well as a significant number of other jobs at the light to sedentary level. (R. at 22.) The ALJ concluded that Cahel could return to work activity and was not disabled. (Id.)

## II. Discussion

### A. Standard of Review

The Social Security Act requires the Court to sustain the Commissioner's findings if they are supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotes and citation omitted). The Court reviews the entire administrative record, but does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. Instead, it must critically examine the evidence and reverse the ALJ's decision only if it lacks either evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## B. The Five-Step Inquiry for Benefits Determination

The Social Security regulations prescribe a sequential five-step inquiry to determine whether a claimant is disabled. In accordance with the regulations, the ALJ must determine:

(1) Whether the claimant is engaged in substantial gainful activity. If so, he is not disabled.

(2) Whether the claimant has a severe medically determinable physical or mental impairment or a combination of impairments that meets the duration requirement of 20 C.F.R. § 416.909. If not, the claimant is not disabled.

(3) Whether the claimant's impairment meets or equals one of the impairments listed as conclusively disabling in the regulations. If so, the claimant is disabled.

(4) Whether the claimant is able to perform past relevant work. If so, the claimant is not disabled.

(5) Whether the claimant is able to perform other work existing in substantial numbers in the national economy.

*See* 20 C.F.R. § 416.920. If the ALJ does not find the claimant to be disabled at step three, then at step four he must determine the claimant's residual functional capacity ("RFC") in order to ascertain whether the claimant can perform any of his past work. 20 C.F.R. § 416.920(e)-(g). If the claimant cannot do any of his past work, the burden shifts to the Commissioner at step five to demonstrate that the claimant can adjust to other jobs that exist in significant numbers in the national economy. *Clifford*, 227 F.3d at 868.

## C. Analysis

Cahel challenges the ALJ's decision on two grounds. First, he argues that the ALJ failed to build a logical bridge between the medical evidence and his ultimate legal conclusions.

Second, Cahel argues that the ALJ did not articulate a sufficient basis for his determination that Cahel's testimony was not entirely credible. The Court considers these arguments in turn.

### 1. The ALJ Did Not Build a Logical Bridge Between the Evidence and the Result.

The Court "cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citing *Green v. Shalala*, 51 F.3d 96, 100-01 (7th Cir. 1995); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984); *Cline v. Sullivan*, 939 F.2d 560, 563-69 (8th Cir. 1991)). In *Steele v. Barnhart*, the Seventh Circuit rejected the argument that "the record as a whole" may "fill[] the gaps in the ALJ's analysis" and found that "regardless [of] whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision." 290 F.3d 936, 941 (7th Cir. 2002). Therefore, the Court confines its review to the reasons supplied by the ALJ.

Cahel argues that the ALJ made significant errors that demonstrate that the ALJ failed to build a logical bridge between the evidence and the result. First, Cahel argues that the ALJ did not take into account the fact that he sought a closed period of benefits. Cahel testified at his hearing before the ALJ that he was no longer disabled and specified that he sought benefits for the period of time it took to rehabilitate his shoulder. (R. at 274-76, 290.) He argues that the ALJ's failure to distinguish between Cahel's present medical condition and Cahel's condition

during the period for which he sought benefits was a substantial error. Second, Cahel argues that the ALJ relied on an erroneous finding that Cahel had not had shoulder surgery since 1991, when in fact it is clear from the record that Cahel had a shoulder replacement in October 2003. Third, Cahel challenges the ALJ's characterization of his two years of physical therapy sessions as a "brief" period of physical therapy. In response, the Commissioner argues that although the ALJ made "articulation errors," the record contains sufficient evidence to build a logical bridge from the evidence to the conclusion. Specifically, he argues that the ALJ could have relied on the opinion evidence of the state agency physician to reach his conclusion.

The crux of the parties' disagreement appears to be a dispute over whether the "logical bridge" test reiterated throughout the Social Security jurisprudence requires only that the ALJ could have built a logical bridge between the evidence and the result, or whether it requires that the ALJ actually build the logical bridge in order to avoid reversal. As illustrated by the cases cited above, there is no question that the ALJ is required to articulate reasoning in his decision that illustrates a connection between facts and conclusions that "a reasonable mind might accept as adequate." *Richardson*, 402 U.S. at 401. The Court finds that in this case the ALJ failed to do so.

The most important error in the ALJ's opinion is his failure to recognize that Cahel sought a closed period of benefits. While Cahel's testimony before the ALJ—which he gave without the benefit of counsel—did not specify a date as of which Cahel considered himself able to work, it is clear from the record that at the time of his hearing he no longer considered himself disabled and that he sought to return to work. (R. at 276, 280, 286, 300.) The precise period for which

Cahel sought benefits is not clear from the evidentiary record.[1] However, without passing on the merits of any particular closed period, or indeed whether Cahel was ever disabled at all, the Court finds that the ALJ's failure to separately consider whether Cahel was disabled during a closed period was reversible error. *See Brown v. Massanari*, 167 F. Supp. 2d 1015, 1020 (N.D. Ill. 2001) (finding that an ALJ's decision was not supported by substantial evidence in part because he failed to separately evaluate whether the plaintiff was disabled during a closed period). Nowhere in his decision did the ALJ distinguish between Cahel's present condition and his prior condition. Instead, the ALJ explicitly relied on Cahel's testimony that he could, at the time of the hearing, work and perform all of the activities of daily living. (R. at 21.) The ALJ also noted that he relied on the state agency physician's opinion because it was consistent with the medical evidence, consistent with Cahel's testimony, and "in particular" consistent with the fact that the claimant was not on any medication. (R. at 21.) Again, this is a reference to Cahel's condition at the time of his hearing, when even Cahel acknowledged that he was no longer disabled. Thus, although the ALJ could have reached his conclusion based on the opinion of the state agency physician if it was supported by relevant evidence, the ALJ in this case specified that he found the physician's opinion reliable because it was corroborated by evidence of Cahel's present medical condition.

The ALJ's apparent misunderstanding as to the period for which Cahel was claiming disability benefits caused him to focus his attention on Cahel's condition at the time of his

---

[1] He testified at the first hearing that he was "just going for that one year" (R. at 280.), while at his second hearing he said that the rehabilitation "took two years." (R. at 286.) In his brief to the Appeals Council, Cahel requested benefits for a closed period of two years. (R. at 28.)

- 11 -

hearing rather than the period following his shoulder replacement surgery. The ALJ's approach to this case is further called into question by his finding that Cahel had not had surgery on his shoulder since 1991. It is clear that Cahel had shoulder replacement surgery in 2003, and that his alleged period of disability was the time during which he was recovering from that very surgery. It is true, as the Commissioner argues, that the surgery took place prior to the first decision denying Cahel disability benefits, while the ALJ in the instant case was considering Cahel's disability only after that date. However, the fact that the ALJ was not considering Cahel's disability prior to the date of the first decision does excuse his apparent unfamiliarity with what is arguably the most significant medical event in the case. Cahel underwent two years of physical therapy not to alleviate a minor stiffness or ache, but to recover from a procedure in which his shoulder joint was removed and replaced by a prosthesis. The severity of the surgery is logically relevant to the intensity of the ensuing physical therapy and Cahel's ability to work during his recovery. The Court is hard-pressed to see how the ALJ's failure to understand this fact could be anything but prejudicial to Cahel's case. This error is in addition to the ALJ's apparent confusion as to whether Cahel sought ongoing or closed-period benefits. Because the ALJ's decision evinces an unfamiliarity with a crucial fact in the case and focuses on answering the wrong question, it is not supported by substantial evidence and must be reversed.

2. The ALJ's Reasons for Discounting Cahel's Credibility Were Not Sufficiently Specific.

An ALJ's credibility determinations generally will not be overturned unless they are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when medical

evidence supports the claimant's allegations, the ALJ's reasons for rejecting the claimant's testimony as not credible "must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez*, 336 F.3d at 539-40 (quoting *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001)).

The ALJ found that Cahel's impairments could reasonably be expected to produce his alleged symptoms but determined that his statements concerning the "intensity, persistence and limiting effects of his symptoms" were not entirely credible. (R. at 21.) The ALJ then observed that Cahel had undergone no treatment other than "brief" physical therapy, was on no medication, and admitted that he could perform the activities of daily living and return to work. (Id.) As Cahel correctly observes, his present physical condition should not have called into question his testimony about his prior physical condition in a case where he only claimed to be disabled for a closed period that had already ended at the time of his hearing.

The ALJ may have found that Cahel never suffered sufficiently intense, persistent, and limiting symptoms to support a finding of disability. This determination may be reasonable. However, the ALJ's decision is not sufficiently specific to provide the Court with any certainty as to the basis of the ALJ's credibility finding. Because the Court cannot determine the basis for the ALJ's finding regarding Cahel's credibility, the ALJ's credibility determination must be reversed.

### III. Conclusion

For the reasons set forth above, Cahel's Motion to Reverse the Final Decision of the Commissioner of Social Security is granted, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: December 5, 2008.